COMMONWEALTH *vs.* FRANCIS A. SYLVIA.

Barnstable. January 8, 1980. — March 19, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Arrest. Probable Cause. Constitutional Law,* Admissions and confessions.

Even if the arrest of the defendant under a warrant issued the same day as a grand jury indictment charging burning a dwelling house was illegal because made without probable cause, the defendant's confession to two police officers was voluntary, and properly admitted in evidence at his trial, where it appeared that the arrest took place at his home at 8:30 A.M., that one and one-half hours elapsed before interrogation, that during such period the police officer advised the defendant of his Miranda rights repeatedly, that he signed in four designated areas an interrogation form, containing a waiver which delineated his rights, that he was advised of his right to make a telephone call, and that the police acted in good faith. [182-185]

INDICTMENT found and returned in the Superior Court on October 3, 1977.

A pretrial motion to suppress evidence was heard by *Umana, J.,* a Municipal Court judge sitting under statutory authority, and the case was tried before *Keating, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Michael L. Altman* for the defendant.

*Thomas M. Greene,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant appeals pursuant to G. L. c. 278, §§ 33A-33H, from a conviction on an indictment charging burning of a dwelling house. The defendant's pretrial motion to suppress the postarrest confession he had given to the police was denied by a motion judge and the defendant filed a timely claim of exception. This confes-

sion, which constituted the major portion of the Commonwealth's case, was introduced at trial through the testimony of two police officers. The case is here on the allowance of the defendant's application for direct appellate review.

The defendant's claim is essentially as follows. Although the defendant was arrested under a warrant which was issued upon a grand jury indictment, his arrest was illegal because it was not made on probable cause. Therefore, his postarrest confession was not admissible because it was the fruit of the illegal arrest. We find the defendant's claim unpersuasive and we affirm the conviction on the ground that the defendant's confession could not have been contaminated by the illegality allegedly involved in the defendant's arrest.

The facts may be summarized briefly as follows. On October 3, 1977, the defendant was indicted on a charge of burning the dwelling house of Patricia Christianson in Dennis on June 11, 1977. Detective William Hall of the Dennis police department was the only witness to testify before the grand jury. Detective Hall testified that the defendant lived in a house on the same street as the house that had been burnt, and that the defendant had been observed at the scene of the fire after the fire truck had arrived. Hall also testified that the fire chief determined that the fire had been set.

According to Detective Hall's testimony, the defendant was interviewed by Officer Yoo at police headquarters two days after the fire. At this interview the defendant acknowledged awareness of his rights and stated that he had simply come to see what was going on when he saw the fire trucks. During the interview the defendant appeared to Officer Yoo to be very nervous and visibly shaken. Officer Hall also informed the grand jury that the defendant's dog had bitten Patricia Christianson's son nine months before the fire and, as a result, the local District Court had ordered the defendant either to remove his dog from Cape Cod or have it destroyed.

Officer Hall's remaining testimony before the grand jury concerned six other fires that had been set in the vicinity of the defendant's home in the summer of 1977. The defendant was indicted for setting two of those six fires but the indictments were disposed of by the district attorney's nolle prosequi.

On the day the defendant was indicted for the burning of the Christianson house, a warrant was issued for his arrest by a clerk of the Superior Court. Pursuant to this warrant the defendant was arrested at his home on October 5, 1977, at 8:30 A.M. The defendant was advised at this time of the reason for his arrest and of his Miranda rights. He was taken to the Dennis police station at approximately 8:45 A.M. where he was again advised of his rights. At approximately 10 A.M. the defendant was given an interrogation form delineating his rights which he read and which was also read to him by a police officer. The defendant signed this document, which contained a waiver of his rights. In response to questioning, the defendant admitted starting two fires at the Christianson home on the evening of June 11, 1977.

At trial, this confession was introduced through the testimony of two police officers. The only other evidence introduced by the Commonwealth to prove that the defendant set the fires was the testimony of Mary Woodruff, a baby sitter who was staying at the Christianson home. She testified that when she saw smoke she brought the Christianson child out of the house where she saw the defendant standing in the yard of the house next door.

The defendant, in asking us to rule that his arrest was unlawful, asks this court to examine the sufficiency of the evidence presented to the grand jury to determine if probable cause existed. This court has never ruled on the question whether the Fourth Amendment to the United States Constitution requires us to examine the evidence heard by a grand jury in order to determine whether the indictment which was the basis for an arrest warrant was supported by probable cause. Cf. *Commonwealth* v. *St.Pierre,* 377

Mass. 650, 656-657 (1979) (leaving open question whether indictment can be attacked for absence of proof before grand jury). Nor is a resolution of this question required to decide the instant case. The defendant's contention is that his arrest was illegal because it was made without probable cause, and that the illegality of the arrest tainted the confession, rendering it inadmissible. As our discussion will make clear, however, it is immaterial whether there was probable cause for the arrest because, even assuming that the arrest was unlawful, the confession was free from the taint of this illegality.

In assessing the admissibility of the defendant's post-arrest statements we are guided by *Commonwealth* v. *Fielding,* 371 Mass. 97 (1976). In that case the defendant was arrested under a warrant which was invalid because it had been issued without probable cause. Moreover, the trial judge found, and we agreed, that the knowledge actually possessed by the police at the time of the defendant's arrest did not amount to probable cause. Following this unlawful arrest, the defendant was informed of his Miranda rights prior to being taken to the police station. At the station he was again informed of his rights and was allowed to make a telephone call. Subsequently, the defendant made incriminating statements to the police. We agreed with the finding of the trial judge that the defendant's statements were voluntary.

In analyzing the admissibility of the defendant's confession we reasoned as follows: "That Fielding's unsuppressed statements were acts of free will within the Fifth Amendment definition qualified them for admission — unless they were fatally infected by the violation of the Fourth Amendment that was incident to his arrest. Such infection will be held to have occurred when the illegality of the police behavior is sufficiently grave and the connection between the illegality and the making of the statements is sufficiently intimate" (citation omitted). *Id.* at 113. In accordance with *Brown* v. *Illinois,* 422 U.S. 590, 603-604 (1975), we explained that the giving of Miranda warnings is one impor-

tant factor in determining whether the confession was obtained by exploitation of the illegal arrest. Other relevant factors include "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly the purpose and flagrancy of the official misconduct." *Commonwealth* v. *Fielding, supra* at 114, quoting from *Brown* v. *Illinois, supra* at 603-604.

Applying these factors in *Fielding,* we reasoned as follows: "[W]e are clear that the Commonwealth sustained its burden of showing admissibility. The breach of the Fourth Amendment was not a deliberate one committed by the police with a purpose to facilitate the procuring of a statement from Fielding. Significantly, the police did not proceed on their own, but sought and obtained a warrant. They lacked sufficient information to measure up to probable cause, but their misbehavior cannot be called flagrant. In these circumstances, outlawing Fielding's statement would hardly have served an important demonstrative purpose of deterring the police from future malfeasance. Between the arrest and the confession there was a space of some three hours in which Fielding could consider his position. In that interval Fielding was given Miranda warnings and also told in less formal terms that he need not make any statement. He used the telephone but apparently did not seek counsel; in his later remark to his brother he adverted to the question of counsel but showed he had made a decision against that assistance. Because of these conditions attending the confession, and finally because the confession was freely made, it stands apart from the arrest." *Id.*

Assuming, arguendo, that the warrant in the instant case was issued without probable cause and that the defendant's arrest was therefore illegal, the instant case takes on a remarkable similarity to *Fielding.* The defendant's arrest, effected at the reasonable hour of 8:30 A.M., was not designed to cause surprise, fright or confusion. See *Brown* v. *Illinois,* 422 U.S. 590, 606 (1975). One and one-half hours elapsed from the moment of arrest until interrogation. During that period, the police advised the defendant of his Miranda

rights repeatedly. They also presented the defendant with an interrogation form that delineated his rights, which he ·signed in four designated areas. He was further advised of his right to a telephone call. There was no "insistent questioning or other pressure or any brutality on the part of the police." *Commonwealth* v. *Fielding, supra* at 112. Therefore, we conclude that the defendant "knowingly and fully surrendered [his] rights to have the assistance of counsel and to remain silent, and made [a] confession which [was] voluntary in the sense in which statements may be so, although made by [a] person in official custody." *Id.* at 111-112.

Here, as in *Fielding,* no deterrent purpose would be served by suppressing the defendant's voluntary statements. The Dennis police in the instant case acted in good faith under a warrant issued by the Superior Court in Barnstable County. They did not arrest the defendant for investigatory purposes with an eye toward eliciting information from him. "It does not appear that the police in any way attempted to exploit the circumstances of the arrest, even assuming . . . that it was illegal." *Commonwealth* v. *LeBlanc,* 373 Mass. 478, 487 (1977). Therefore we conclude that the defendant's voluntary confession was properly admitted.

*Judgment affirmed.*