COMMONWEALTH vs. JOSEPH M. COTE, JR.

Berkshire. February 2, 1982. — June 1, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Practice, Criminal,* Arraignment. *Constitutional Law,* Admissions and
    confessions, Waiver of constitutional rights. *Waiver. Evidence,* Ad-
    missions and confessions.

A judge's findings on a motion to suppress statements to police by the
    defendant in a criminal case did not warrant the conclusion that a
    delay in arraigning the defendant amounted to police manipulation
    violative of his constitutional rights. [359-360]
A delay in arraigning a criminal defendant did not violate any of his Fed-
    eral constitutional rights. [360-361]
A judge considering the admissibility of a criminal defendant's pre-arraign-
    ment statements to police in the light of a violation of the speedy ar-
    raignment requirement of Mass. R. Crim. P. 7 (a) should weigh the
    same factors as he would in the case of statements and evidence obtained
    as the result of an illegal arrest, and, as to the defendant's post-arraign-
    ment statements, should apply the "fruit of the poisonous tree" doc-
    trine. [361-362]

INDICTMENTS found and returned in the Superior Court
Department on February 3, 1981.

A pretrial motion to suppress evidence was heard by
*Cross*, J.

An application for an interlocutory appeal was allowed
by *Liacos*, J., in the Supreme Judicial Court for the county
of Suffolk, and the appeal was reported by him.

*Francis X. Spina*, Assistant District Attorney, for the
Commonwealth.

*Edward J. Spence, III*, for the defendant.

ABRAMS, J. The Commonwealth appeals from a Superior
Court judge's order suppressing some physical evidence and
all statements made by Joseph M. Cote, Jr., because of pre-
arraignment delay of approximately four hours. Relying on

*Brewer* v. *Williams,* 430 U.S. 387 (1977), and *Massiah* v. *United States,* 377 U.S. 201 (1964), the motion judge ruled that the statements and the physical evidence were inadmissible because of a violation of the defendant's right to counsel guaranteed by the Sixth Amendment to the United States Constitution. For the reasons set forth in this opinion, we reverse and remand for further proceedings.

We summarize the facts found by the judge. On January 13, 1981, at approximately 2:25 A.M., the North Adams police arrested the defendant for operating a motor vehicle without a license and for unauthorized use of a motor vehicle. The officers took the defendant to the North Adams police station where he was searched. They found a plastic bag containing jewelry, bills, coins, and silver. At approximately 2:35 A.M., the defendant was advised of his statutory right to use a telephone to communicate with family, friends, or an attorney and to arrange for bail. G. L. c. 276, § 33A. Thereafter, the defendant was placed in a cell. The defendant appeared normal.[1]

At 8 A.M., on January 13, Captain Bush of the North Adams police came on duty. He checked police records and telephoned the Adams and Williamstown police departments to determine whether any of the items taken from the defendant had been reported as stolen. The Williamstown police wanted to view the property and dispatched an officer, who arrived at the North Adams police station at approximately 9:15 A.M. The officer viewed the jewelry and called an individual whom the officer believed to be the owner of the items. The individual arrived and identified the jewelry as his.

Commencing at 9 A.M., the Northern Berkshire District Court was in session in Adams. Captain Bush telephoned the court and told someone that there would be a delay in bringing the defendant for arraignment because the police

---

[1] The judge, who heard the motion to suppress, "disbelieved" the defendant's claim that the defendant had consumed a case of beer and three pills of lysergic acid diathylamide (LSD) every day for two weeks.

"were still investigating the property that had been found in [the defendant's] possession." He arranged to have the defendant arraigned during the afternoon session, which commenced at 1 P.M.

After breakfast, at approximately 10 A.M., the defendant was brought before Captain Bush, the Williamstown officer, and a third officer (probably from North Adams). One officer read the defendant the Miranda warnings. See *Miranda* v. *Arizona*, 384 U.S. 436 (1964). At that time, the defendant did not sign the Miranda card, but said he understood the warnings. The judge found that the defendant appeared normal and did, in fact, understand his rights. The police then questioned the defendant, who made a statement. The defendant told the officers that he had other goods stolen from the owner[2] of the items in the plastic bag, and that these other goods were in the apartment of a friend, Scott Martin. It is not clear whether the defendant's statement was limited to that one housebreak.[3] The judge found that the defendant consented to an officer's going to the apartment to obtain these items.[4] At approximately noon, the Williamstown officer went to the apartment where Martin handed the officer some stolen goods and a weapon, all of which were under the mattress of a cot used by the defendant.

At approximately 12:30 P.M., another officer took the defendant to the Northern Berkshire District Court (Adams) for arraignment at 1 P.M. on the charges of receiving stolen property,[5] using a motor vehicle without authority, and

[2] According to the Commonwealth's application for leave to appeal.

[3] In its application for leave to appeal, the Commonwealth suggests that statement solely related to the one housebreak.

[4] The defendant's status with respect to the apartment is not clear, and the judge made no findings on the defendant's standing to object to a search of the apartment. The judge suppressed the items recovered by the officer, on the basis of the delay in arraignment.

[5] Apparently, this charge related to the items in the plastic bag found on the defendant at the time of his arrest. The judge did not suppress this evidence.

driving without a license. The judge found that Attorney Richard was appointed for the sole purpose of bail, and was present at the arraignment proceeding. At some point during the proceedings, Attorney Spence, who was not present at the arraignment, was appointed trial counsel. No letter was sent to Mr. Spence to inform him of his appointment, and no date of appointment appears in the record. The defendant did not make bail and the North Adams officer brought the defendant back to the North Adams police station.

At 3:20 P.M., an officer of the Adams police department arrived at the police station and read the defendant the Miranda warnings. The judge found that the defendant understood the warnings. The defendant made a statement.

At 5:30 or 6 P.M., two officers of the North Adams police department met with the defendant. One of the officers read the Miranda warnings to the defendant. The defendant signed a card, indicating that he understood the warnings. The officers asked the defendant who his attorney was. The defendant stated that it was Attorney Richard. One of the officers called Attorney Richard, who told the officer that he only represented the defendant for the purpose of bail, and if the defendant wanted to talk to the police, he should "go ahead and talk." The defendant gave the officers a statement. The judge found that the defendant had not been mistreated, and that he understood the Miranda warnings.

After having dinner, the defendant returned to his cell at approximately 7 P.M. At 7:30 P.M., the defendant "yelled out" that he wanted to speak with the Williamstown police. A Williamstown officer returned to the station, and he read the Miranda warnings to the defendant. The defendant made another statement. Later, the defendant "hollered" that he wanted to "clear up" some matters involving the Adams "breaks." An Adams officer returned to the station, and he read the Miranda warnings to the defendant. The defendant made another statement.

The next morning, January 14, 1981, the North Adams police took the defendant to a house of correction. A Cheshire police officer, who had read a newspaper story concerning the defendant, believed that the defendant might be involved in some Cheshire "breaks." The officer went to the house of correction where the defendant was being held in lieu of bail. The officer asked the defendant if he had an attorney. The defendant told the officer that he did not have an attorney, and that he did not want to talk to anyone. The officer left. The next day, the defendant told a guard that he wanted to speak to the Cheshire officer. The officer returned and read the defendant the Miranda warnings. The defendant signed a card stating that he understood his rights, and gave a statement to the officer.

In the late evening of January 15, 1981, or the early morning of January 16, 1981, the defendant asked a guard to telephone Attorney Spence. On January 16, 1981, Attorney Spence learned for the first time that he had been appointed as counsel for the defendant.

Before trial, the defendant filed a motion to suppress all statements made while in custody, and to suppress the evidence seized from Scott Martin's apartment. The defendant alleged violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and arts. 12 and 14 of the Massachusetts Declaration of Rights. Relying exclusively on *Brewer* v. *Williams*, 430 U.S. 387 (1977), and *Massiah* v. *United States*, 377 U.S. 207 (1964), the judge ruled that as a matter of Federal law the defendant was entitled to counsel at the time he should have been arraigned (9 A.M.), and that the police should not have interrogated the defendant in the absence of counsel because of the delay in arraignment. The judge also ruled that all post-arraignment statements, made in the absence of counsel, should be suppressed. Finally, the judge ruled that the defendant could not waive his right to counsel without first consulting with counsel. The judge determined that there were no violations of the Fourth[6] and Fifth Amendments.

---

[6] The defendant claims for the first time on appeal that his Fourth Amendment rights were violated because he was held without probable

The judge's factual findings on these issues were solely focused on whether Miranda warnings were given and whether the defendant understood them.

The Commonwealth filed a notice of appeal with a request for leave to apply for interlocutory appellate review. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 883 (1979). A single justice of this court issued an interim order asking the motion judge to amplify his rulings in light of the intervening Supreme Court decision of *Edwards* v. *Arizona*, 451 U.S. 477 (1981). The single justice also suggested that the judge include a discussion of his rulings on the defendant's Fourth Amendment claims. The motion judge filed some additional findings and rulings,[7] and the single justice granted the Commonwealth's request for interlocutory appeal, and reported the matter to this court.

The defendant contends that if the police had arraigned him promptly, he would have been assigned counsel at approximately 9 A.M. He asserts that the police subverted his right to counsel by delaying his arraignment. He, therefore, concludes that the failure promptly to arraign him supports the judge's ruling that all statements, whether prearraignment or postarraignment, must be suppressed as a matter of Federal constitutional law.

In essence, the judge determined that the delay in arraignment was equivalent to extraordinary police manipulation

---

cause concerning all charges except the original motor vehicle charges. This issue was not raised below and, therefore, cannot be raised on appeal. See *Commonwealth* v. *Lewis*, 346 Mass. 373, 383 (1963) ("We need not consider whether the defendant was arrested without probable cause because he did not raise that point at the [hearing]"). "[W]e shall not disregard the theory of law on which the parties proceeded at trial." *Commonwealth* v. *Thompson*, 382 Mass. 379, 382 (1981). See note 10, *infra*.

[7] Essentially, the judge determined that his conclusions were unaffected by *Edwards* v. *Arizona*, 451 U.S. 477 (1981). The judge found that the defendant "never asked any of the police officers to help him contact a lawyer. Nor did the [d]efendant ever tell police officers that he wanted to talk to a lawyer, nor did he ask to have interrogation terminated until such time as he could confer with counsel.".

such as that condemned in *Brewer* and *Massiah*. The facts found by the judge do not support such a sweeping conclusion.[8] In *Brewer*, the police interrogated the defendant after arraignment, despite the defendant's express and implicit assertions of his right to counsel. In addition, a police officer's remarks referred to as the "Christian burial speech" were designed to avoid the officer's agreement not to interrogate the defendant. *Brewer* v. *Williams*, 430 U.S. 387, 391, 399, 405 (1977).

In *Massiah*, the police blatantly attempted to subvert the accused's right to counsel by surreptitiously eliciting incriminating statements by use of an agent after indictment and arraignment, and in the absence of counsel. *Massiah* v. *United States*, 377 U.S. 201, 202, 206 (1964). In the cases relied on by the judge, after the defendant was arraigned (*Brewer*), or indicted and arraigned (*Massiah*), the police purposefully interfered with the defendant's access to a specific attorney who the police knew represented the defendant. The judge made no factual findings which would bring this case within *Brewer* and *Massiah*.

Finally, since the Supreme Court has not imposed on the States a constitutional duty to arraign an accused promptly (see *Commonwealth* v. *Dubois*, 353 Mass. 223, 227 [1967]; *Commonwealth* v. *Banuchi*, 335 Mass. 649, 656-657 [1957]), the judge erred in his conclusion[9] that there was a violation of Federal constitutional law. "[A] [S]tate court

---

[8] For example, there are no findings whether the defendant was aware that counsel had been appointed for him. There are no findings whether the police scrupulously honored the defendant's right to silence or whether, after arraignment, the police used trickery or stratagem to prevent the defendant from benefiting from the advice and presence of counsel.

[9] The judge also erroneously suppressed all statements made by the defendant on the basis that the defendant could not validly waive his right to counsel without first consulting with counsel. A defendant may "without notice to counsel . . . [waive] his rights under the Sixth and Fourteenth Amendments." *Brewer* v. *Williams*, 430 U.S. 387, 405-406 (1977). Accord, *Commonwealth* v. *Williams*, 378 Mass. 217, 227 n.10 (1979); *Commonwealth* v. *Santo*, 375 Mass. 299, 304-305 (1978); *Commonwealth* v. *Frongillo*, 359 Mass. 132, 136-137 (1971).

can neither add to nor subtract from the mandates of the United States Constitution." *North Carolina* v. *Butler*, 441 U.S. 369, 376 (1979). Therefore, we reverse and remand.

On remand, the parties[10] should address the issue of a violation of Mass. R. Crim. P. 7 (a) (1), 378 Mass. 855 (1979).[11] In considering this issue the judge should weigh the same factors as in the case of statements and evidence obtained as a result of an illegal arrest. See *Commonwealth* v. *Sylvia*, 380 Mass. 180, 183-184 (1980); *Commonwealth* v. *Haas*, 373 Mass. 545, 555 (1977); *Commonwealth* v. *Fielding*, 371 Mass. 97, 113 (1976). See also, *Commonwealth* v. *Bouchard*, 347 Mass. 418, 421 (1964) ("exclusion would be a reasonable sanction for violation of [G. L. c. 276,] § 33A and ground for a motion to suppress"). See generally, *Dunaway* v. *New York*, 442 U.S. 200, 217-219 (1979); *Brown* v. *Illinois*, 422 U.S. 590, 603-604 (1975). If the judge determines that the delay was arranged "by the police with a purpose to facilitate the procuring of a statement [or other evidence] from" the defendant, suppression would be appropriate. See *Commonwealth* v. *Sylvia*, 380 Mass. 180, 184 (1980).

Assuming that the judge decides that police erred in delaying the arraignment, and suppresses the pre-arraignment statement or other evidence obtained thereby, that does not end the judge's inquiry as to the postarraignment statements. The judge also must determine the admissibility of

---

[10] The defendant's motion also raised issues of voluntariness and waiver, as well as the interference with the right to counsel based on the delay in arraignment. On remand, these issues should be addressed. Further, the defendant may also want to raise any issues concerning probable cause. See note 6, *supra*.

[11] Massachusetts Rule of Criminal Procedure 7 (a) (1), 378 Mass. 855 (1979), provides in pertinent part: "A defendant who has been arrested shall be brought before a court if then in session, and if not, at its next session." A rule requiring the defendant's prompt appearance in court prevents unlawful detention and eliminates the opportunity and incentive for application of improper police pressure. See *United States* v. *Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973); *United States* v. *Middleton*, 344 F.2d 78 (2d Cir. 1965).

the postarraignment statements by application of the "fruit of the poisonous tree" doctrine. "Where the nexus between the conduct of the police deemed illegal and the discovery of the challenged evidence is so attenuated as to dissipate the taint, such evidence is admissible." *Commonwealth* v. *Haas*, 373 Mass. 545, 556 (1977). *Commonwealth* v. *Watkins*, 375 Mass. 472, 482-483 & n.9 (1978). The Commonwealth, of course, has the burden of proof on this issue. See generally *Commonwealth* v. *Tavares*, 385 Mass. 140 (1982).

We reverse the order allowing the motion to suppress, and remand the case for further proceedings consistent with this opinion.

*So ordered.*