COMMONWEALTH *vs.* JAMES L. GRZEMBSKI. March 16, 1984. *Arrest. Probable Cause. Constitutional Law,* Admissions and confessions.

Grzembski was indicted for breaking and entering with intent to commit larceny. His motion to suppress the articles taken pursuant to the search warrants was granted, apparently because each search warrant did not sufficiently specify the items to be seized. A motion to suppress a written statement by Grzembski inculpating him was denied. Grzembski then proceeded to trial before the same judge sitting without a jury. The judge made an inquiry fully complying with the mandate of *Ciummei* v. *Commonwealth*, 378 Mass. 504, 508-510 (1979), and also a frank disclosure of his probable action in the light of his denial of Grzembski's motion to suppress his signed statement. Grzembski was found guilty on the basis of that statement and a few other facts then stipulated. His appeal is based on the denial of the motion to suppress the inculpatory statement on the ground that probable cause for his arrest on a Massachusetts warrant had not been shown. We affirm.

---

On August 23, 1982, property was stolen from the house of Ira Adler in Sturbridge. On September 8, 1982, Detectives Green and Smith of the Connecticut State police, assigned to assist Chief Denault of the Sturbridge police, applied to a Connecticut court for warrants to search apartments 104, ground floor, and 103, second floor, of a building in North Grosvenordale, Connecticut. The applications, each signed by both officers, contained substantially identical affidavits which, in pars. 1 to 4, identified the affiants and the place and date of the alleged offense. Paragraphs 5 to 7 of the affidavit in the application to search apartment 103 (second floor), stated to be occupied by James Grzembski, read as follows: "5. That on 9-7-82, Chief Denault obtained a . . . signed statement from Edward A. Dodge DOB: 02-05-52 of 53 West St. Southbridge, Ma. . . . Dodge stated that he had visited his step-brother, Philip Livernois DOB: 09-20-62 at his apartment at 104 Main St. North Grosvenordale, Conn. on 9-7-82 in the A.M. While at this location he noticed the 19 . . . [inch] RCA XL100 Color T.V. with AM/FM radio. Livernois admitted to Dodge that this was stolen and also that a friend that lives in apartment 103, which is up-stairs from Livernois had some items, such as a Sony Sterio [sic] Amp Model 60-65 SN; 160-34-831. This upstairs apartment is occupied by James Grzembski DOB: 09-6-50. 6. That on the day of the [b]urglary . . . Livernois and . . . Grzembski [were] working for Philip R. Lanctot of 819 Dennison Dr. Southbridge, Ma. . . . [operator of a landscaping company] and . . . were cutting grass on the victim[']s property . . . . 7. That . . . Livernois and . . . Grzembski have an extensive record and been convicted for [b]urglary and [l]arceny."

Grzembski's apartment was searched on September 8, 1982, and various items were seized pursuant to the warrant. Grzembski was arrested during the night of September 8, and was held at the "Southbridge lock-up." Chief Denault, on the following morning, took him to the District Court at Dudley about 8:45 A.M. There Grzembski first was turned over to the probation department. Thereafter Chief Denault, in an anteroom of the clerk's office, spoke with Grzembski, whom the chief had "known . . . since he was a youngster."

Chief Denault advised Grzembski of his rights. Grzembski "was very cooperative" from the beginning. Grzembski signed a Miranda card and made an inculpatory statement, which he signed when it had been transcribed, admitting the breaking and stealing. "The whole interview lasted perhaps five or six minutes."

1. The motion judge in effect determined that the police (in Connecticut and Massachusetts) knew, from Dodge's written statement, and otherwise, facts sufficient to provide probable cause for Grzembski's arrest. The circumstances of the arrest had not been presented to the judge except "in a peripheral manner" apart from Chief Denault's testimony "that they had picked up . . . Grzembski on a warrant" and statements in an affidavit filed by Grzembski's trial counsel, that the "complaints and warrants were issued by [the] Dudley District Court" after the Connecticut searches. The same affidavit stated that the arrest took place about 6:47 P.M. so that, by the time Chief Denault first questioned Grzembski, more than thirteen hours had elapsed after his arrest. See *Commonwealth* v. *Sylvia,*

380 Mass. 180, 184-185 (1980); *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 258-259 (1982). No arrest warrant from the District Court in Dudley nor any facts presented in an application for one appears in the record. See Smith, Criminal Practice & Procedure, §§ 82-88 (2d ed. 1983). The motion judge pointed out that it had been mentioned in the search warrant application that Livernois and Grzembski had worked together at the exact scene and on the very day of the theft and that each had a relevant prior criminal record.

Dodge's statement was not that of an anonymous informer, but of a named citizen living at a stated address who asserted that he had come upon direct evidence of criminal activity. As Livernois's step-brother, Dodge was in a position which afforded opportunity for reliable knowledge. His reports need not be subjected to the same degree of investigation of his reliability as those of a nameless informer. See *Commonwealth* v. *Bowden,* 379 Mass. 472, 477 (1980); *Commonwealth* v. *Martin,* 6 Mass. App. Ct. 624, 627-629 (1978). See also *Commonwealth* v. *Lee,* 10 Mass. App. Ct. 518, 526-528 (1980). Dodge had seen in Livernois's apartment a radio of a type known to have been taken from the Adler house, and which Livernois admitted to Dodge had been stolen. The police could give some weight to Livernois's statement to Dodge (as one against the former's penal interest). The statement implicated Grzembski, whose apartment was upstairs, in the same criminal events by reporting that Grzembski had in his apartment an item of a type known to have been stolen from the Adler house.

The motion judge found that Grzembski during the interview with Chief Denault "had every appearance of being normal and did not show nervousness." He concluded that, even if the arrest had been illegal, "any taint . . . was sufficiently attenuated by the time that the police chief and . . . [Grzembski] arrived at the [D]istrict [C]ourt," and that Grzembski's statement, "clearly voluntary, was not tainted." See *Commonwealth* v. *Bradshaw,* 385 Mass. at 258-259, and cases cited.

2. *Illinois* v. *Gates,* 462 U.S. 213, 238, 239(1983), established that a test, based upon the "totality-of-the-circumstances," may be applied in determining the existence of probable cause for a search warrant and that such a test constitutes a "flexible, easily applied standard." The Supreme Judicial Court in *Commonwealth* v. *Honneus,* 390 Mass. 136, 140-141 (1983), accepted the *Gates* principle to some extent. See, however, *Commonwealth* v. *Upton,* 390 Mass. 562, 566-569, 570, 572 (1983), where the majority opinion clearly did not adopt the broadest possible view of the *Gates* decison and, perhaps in part because the court could not be certain of the identity of the informer, held that the affidavit there considered did not disclose probable cause for a search. The majority opinion did recognize (at 570) that information provided by a known (rather than an anonymous) informer, on that account might be entitled to more significant weight and that the affidavit (at 572 n.8) "would have been somewhat strengthened" by references to Upton's prior convictions and possibly to his reputation as a "fence." See also *Commonwealth* v. *Nowells,* 390 Mass. 621, 622 (1983), which also dealt with tips by *unnamed* informers.

This record does not show upon what basis the Dudley District Court issued the arrest warrant. Even if it be assumed, however, that the information supplied

was essentially that set out in the application for the Connecticut search warrant, we are of opinion that, in the aggregate, the information provided probable cause for Grzembski's arrest. We have indicated sufficiently above what we regard as important distinctions between the situation revealed in the *Upton* case and the situation in this case. The trial judge justifiably concluded that Grzembski's confession was voluntary and not induced by any coercion or improper police practice. The police acted upon an arrest warrant as in the *Sylvia* case, 380 Mass. at 183-185, *supra*. The facts bear no reasonable resemblance to those considered in *Taylor* v. *Alabama,* 457 U.S. 687, 690-691 (1982), and the cases there cited.

*Judgment affirmed.*

*Susan G. Kauffman* for the defendant.
*William F. George,* Assistant District Attorney, for the Commonwealth.