## Commonwealth *vs.* Hipolito Rosario.

Hampden. November 7, 1995. - February 12, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, O'Connor, Greaney, & Fried, JJ.

*Practice, Criminal,* Arraignment, Delay in commencement of prosecution, Motion to suppress. *Evidence,* Admissions and confessions. *Rules of Criminal Procedure. Due Process of Law,* Delay in commencement of prosecution.

Discussion of the duty of police officers to bring an arrested person before a court as soon as is reasonably possible and the factors that guide the determination of the reasonableness of any delay in arraigning a person who has been arrested, in the context of the admissibility of statements given by a defendant after a waiver of Miranda rights but during a period of detention when the defendant could have been presented to the court. [51-56]

The court announced that, in the future, with respect to police questioning of an arrested person, an otherwise admissible statement is not to be excluded as evidence on the ground of unreasonable delay in the defendant's arraignment, if the statement is made within six hours of the arrest (day or night), or if (at any time) the defendant makes an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay. [56-57] Liacos, C.J., dissenting. O'Connor, J., concurring in part.

The statements of a criminal defendant, who was arrested on probable cause in midafternoon and was held overnight and then for at least five hours while court was in session, during which period, beginning more than six hours after the arrest, he voluntarily and knowingly waived his Miranda rights and confessed to a number of burglaries unrelated to the matter for which he was arrested, were not, in the circumstances, required to be suppressed as taken in violation of Mass. R. Crim. P. 7 (a) (1), in light of the holding of *Commonwealth* v. *Fryar,* 414 Mass. 732, 743 (1993). [57-58] Liacos, C.J., dissenting. O'Connor, J., concurring.

Indictments found and returned in the Superior Court Department on September 2, 1993.

A pretrial motion to suppress evidence was heard by *John F. Moriarty,* J.

Following allowance of the Commonwealth's application for an interlocutory appeal in the Supreme Judicial Court for the county of Suffolk by *Abrams,* J., the case was reported by

her to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Regina Zupan,* Committee for Public Counsel Services, for the defendant.

WILKINS, J. We consider whether the defendant's confessions should be suppressed because, following his arrest, the police delayed his arraignment until after questioning that led to his confessions. The defendant has been charged in six indictments for breaking and entering in the nighttime and in six indictments for larceny.

A Superior Court judge suppressed the defendant's confessions to various 1993 burglaries in Springfield principally because, after the defendant's arrest, the police deliberately delayed the defendant's arraignment for the purpose of obtaining incriminating statements from him. A single justice of this court allowed the Commonwealth's application for leave to take an interlocutory appeal. In an unpublished opinion, the Appeals Court affirmed the order allowing the defendant's motion to suppress. See 38 Mass. App. Ct. 1104 (1995). We granted the Commonwealth's application for further appellate review.

In August, 1993, officers assigned to the Springfield police department's burglary squad were investigating a series of burglaries that had been committed in the Forest Park section of that city. They obtained the nickname and a description of the person who had apparently committed one of the burglaries. A man meeting that description fled when a police officer sought to question him. Later, on August 25, the police saw the man again, and once again, he declined to stop for questioning and fled. This time, however, after a long pursuit, the police apprehended him between 2:30 P.M. and 3 P.M. He told the police that his name was Hector Gonzalez. A check at the police station disclosed that there were warrants outstanding for Hector Gonzalez for assault and battery and for assault and battery by means of a dangerous weapon. The defendant was arrested on the warrants and brought to the detective bureau where he was questioned as to his true identity. He was not advised of his right to use a telephone

until about 5 P.M.[1] He was booked about 5 P.M. and finally admitted that his name was Hipolito Rosario and that he used the name Hector Gonzalez as an alias. The defendant was held overnight and interviewed in the morning in the detective bureau, commencing about 9:15 A.M. He was given Miranda warnings. The judge ruled that the defendant fully understood the Miranda warnings and voluntarily and intelligently waived his Miranda rights. The judge also ruled that the defendant's statements were voluntary and not the product of threats or coercion and were the product of a rational intellect.

Although the defendant initially denied that he had committed any burglaries, he later admitted that he had committed several. He agreed to go with the police to point out the residences that he had burglarized. He identified about six houses, all but one of which were listed in police records of places of reported burglaries. As to the exception, inquiry of the occupant disclosed that she had not reported the burglary. The police returned the defendant to the police station where, at 11:55 A.M., an officer began typing a statement which the defendant signed. The defendant was brought to court on the outstanding warrants in the afternoon.

The judge assumed that, even with prompt booking on the previous day, there would not have been time to arraign the defendant that day. On the other hand, the judge found that at 9 A.M. on the next day, the defendant could have been presented to the court from which the warrants had been issued.

The motion judge ruled that the police had violated Mass. R. Crim. P. 7 (a) (1), as amended, 397 Mass. 1226 (1986), because on August 26, the second day, they brought the defendant to the detective bureau for questioning instead of taking him to court. "I find the conclusion inescapable that [the officers] deliberately delayed presenting the defendant at the appropriate court in the hope that they could entice from him a confession of his responsibility for the series of burglaries

---

[1]The motion judge concluded that this delay was a violation of G. L. c. 276, § 33A (1994 ed.), and based his ruling suppressing the defendant's subsequent confessions in minor part on the failure to advise the defendant of his right to use a telephone. The defendant concedes that this ruling was erroneous because the defendant's statements were not made until after he had been advised of this right. See Commonwealth v. Jones, 362 Mass. 497, 502 (1972).

that had been plaguing the Forest Park section of the city." They knew, the judge said, that counsel would be appointed to represent the defendant at arraignment and thereafter the opportunity to obtain a statement would be greatly diminished. The motion judge allowed the defendant's motion to suppress his oral and written statements, largely on the basis of the violation of Mass. R. Crim. P. 7 (a) (1). See note 1 above.

The Appeals Court affirmed. It concluded that the error concerning the violation of the defendant's right to use a telephone (G. L. c. 276, § 33A [1994 ed.]) was not significant because the incriminating statements were made after the defendant was advised of his right to use a telephone. The Appeals Court further concluded, however, that the delay had been "calculated to obtain an inculpatory statement before the defendant could consult with appointed counsel." The Appeals Court emphasized that there had been deliberate interference with the right to counsel, "egregious misconduct which is to be discouraged by strong prophylactic measures," citing *Commonwealth* v. *Manning*, 373 Mass. 438, 443-445 (1977). The motion judge, however, did not base his ruling on the denial of any constitutional right to counsel, and the defendant has made no such argument. The defendant argues only that the deliberate police delay in arraignment violated Mass. R. Crim. P. 7 (a) (1) and requires suppression.

Rule 7 (a) (1) of the Massachusetts Rules of Criminal Procedure provides that "[a] defendant who has been arrested shall be brought before a court if then in session, and if not, at its next session." The rule makes no distinction between a person who has been arrested pursuant to a warrant and one arrested without a warrant. The rule does not state when, during the respective sessions, an arrested defendant must be brought before a court, nor does the rule specify any consequence of noncompliance. We have said that rule 7 (a) (1) is essentially a codification of Massachusetts case law. See *Commonwealth* v. *Hodgkins*, 401 Mass. 871, 876 (1988).

The police have long had the duty to bring an arrested person before a court as soon as is reasonably possible. See *Keefe* v. *Hart*, 213 Mass. 476, 482 (1913); *Tubbs* v. *Tukey*, 3 Cush. 438, 440 (1849). The purpose of the rule is to prevent unlawful detention and to eliminate the opportunity and incentive for application of improper police pressure. See

*Commonwealth* v. *Perito*, 417 Mass. 674, 680 (1994), citing
*Commonwealth* v. *Cote*, 386 Mass. 354, 361 n.11 (1982). The
reasonableness of any delay is to be determined by the cir-
cumstances. See *Commonwealth* v. *Perito, supra* at 680; *Com-
monwealth* v. *Hodgkins, supra* at 876-877. We have accepted
rulings that an arrest made after court closed for the day, fol-
lowed by an arraignment on the next day, did not involve un-
reasonable delay and that a confession otherwise properly
obtained in the interim need not be suppressed. See *Com-
monwealth* v. *Dubois*, 353 Mass. 223, 226 (1967); *Com-
monwealth* v. *DiStasio*, 294 Mass. 273, 284 (1936). We have
also accepted a trial judge's conclusion that delay was not un-
reasonable when a defendant was arrested on Sunday night
and not presented to court until the next Wednesday. *Com-
monwealth* v. *Banuchi*, 335 Mass. 649, 656 (1957). In the
*Banuchi* opinion, the court tolerated delay caused in part by
the recording of the defendant's confession and the investiga-
tion of the defendant's "various stories." *Id.* at 657. We are
not aware of any reported Massachusetts opinion in which a
statement was suppressed because of unreasonable delay in
arraigning a defendant.

This court has attempted to identify factors that should
guide the determination of the reasonableness of any delay in
arraigning a person who has been arrested. We have sug-
gested that the same factors that should be used in determin-
ing the admissibility of a confession made following an illegal
arrest should be considered in cases involving delayed ar-
raignment. See *Commonwealth* v. *Sylvia*, 380 Mass. 180, 183-
184 (1980), citing *Commonwealth* v. *Fielding*, 371 Mass. 97,
113-114 (1976). These factors are (1) whether Miranda warn-
ings were given; (2) the circumstances, including the passage
of time between the illegal arrest and the confession; and (3)
the purpose and flagrancy of the official misconduct.[2] *Id.* In
the case before us the police gave Miranda warnings; the
defendant's confession was made freely, intelligently, and vol-
untarily; and he agreed to drive around the Forest Park sec-
tion of Springfield to identify houses that he had burglarized.
Apart from the intentional delay itself, there appears to have
been no arguably official misconduct.

---

[2]The passage of time between an illegal arrest and a confession may dis-
sipate the taint of the illegality, but it also points in the defendant's favor
when the question is whether any delay in arraignment was reasonable.

What happened in this case is not significantly different from what happens in any case in which police do not take a defendant to be arraigned at the earliest feasible moment, but rather, after giving Miranda warnings, interrogate the defendant and obtain a free, intelligent, and voluntary confession. In this case, the judge ruled that the police intentionally delayed arraignment in order to obtain a confession. In *Commonwealth* v. *Fryar*, 414 Mass. 732 (1993), however, the defendant, who had been arrested in the middle of the night, confessed "after the hour when overnight arrestees are usually taken to the District Court for arraignment and appointment of counsel." *Id.* at 743. The defendant argued that common sense required the conclusion that the delay was a deliberate attempt by the police to interrogate the defendant without the assistance of counsel. *Id.* This court accepted what it called the motion judge's implicit (and unexplained) finding that the police had not delayed the defendant's arraignment intentionally. *Id.*[3]

The problem is that every police officer knows that an arrested person must be arraigned within a reasonable time and, when arraigned, will have a right to counsel. Any delay for the purpose of interrogation during a time when the appropriate court is in session involves a deliberate decision to delay arraignment in the sense in which the motion judge ruled in this case. The ultimate question then is whether the police should be allowed to delay arraignment in order to question a person who has been arrested.

Police, trial judges, prosecutors, and defense counsel are entitled to as clear a rule as possible concerning both the right of the police to question an arrested person and the standard for suppressing statements made by a defendant after arrest and before arraignment. Of course, if the defendant did not receive and waive his Miranda rights, or if the defendant did not make the statements freely, intelligently, and voluntarily or, if the statements were obtained before he was advised of his right to use a telephone (see G. L. c. 276, § 33A), the statements must be suppressed. Yet, as this case and our cases cited earlier indicate, trial court judges have

---

[3]The only apparent, possibly significant, distinguishing fact between the *Fryar* case and the one now before us is that, in the *Fryar* case, the police learned at about 7:30 A.M. that the victim had died and that they were dealing with a homicide. *Id.*

different views on the reasonableness of a delay in arraignment knowingly undertaken in order to question a defendant. The reasonableness standard involves a measure of uncertainty and the likelihood of uneven application in practice.

A rule that effectively bars all police questioning of an arrestee in circumstances in which Miranda rights were voluntarily and intelligently waived and the defendant's statements were free, intelligent, and voluntary and the product of a rational intellect is unnecessary. Certainly a voluntary, informed waiver of the right to prompt arraignment should justify the admission of subsequent statements that are otherwise admissible. See *Commonwealth* v. *Hodgkins,* 401 Mass. 871, 877 (1988) (fully informed of his rights, defendant signed waiver of prompt arraignment).

We do not favor a standard that measures the admissibility of an arrestee's statements based on when the arrest and questioning occurred in relation to when the court is in session. It is unreasonable to have a rule that permits interrogation when the court is not in session but bars interrogation when the court is in session. Such a rule might well influence when the police would execute warrants and, if so, we would expect challenges that the police intentionally made an arrest at a time when court was not in session in order to obtain a confession before the court opened.

The Uniform Rules of Criminal Procedure, 10 U.L.A. App. (Master ed. 1987), approved by the National Conference of Commissioners on Uniform State Laws, provide that a "detained or arrested" individual must be brought before a magistrate within six hours (excluding any time between 6 P.M. and 7 A.M.), barring extraordinary circumstances. Even within the six hours, presentation may not be delayed for the purpose of questioning following a waiver of Miranda rights. See 10 U.L.A. App. Rule 311 (b) (Spec. Pamph. 1992). Thus, under rule 311 (b), if the court is in session, delay for the purposes of questioning an arrested person is forbidden. Rule 311 (b), however, inherently permits questioning that does not delay arraignment.

The American Law Institute's Model Code of Pre-Arraignment Procedure allows a brief but identifiable period for questioning an arrested person before arraignment (or release). See Model Code of Pre-Arraignment Procedure § 140.8 (4) (Proposed Official Draft 1975). A specific but

arbitrary time limit was adopted in order to be "consistent with the premise of the Code that police and prosecutors should be explicitly informed what they are, and are not, authorized to do, rather than being forced to await a court interpretation of what constitutes 'unnecessary' or 'undue' delay on a case-by-case basis." *Id.*, Commentary on § 130.2 at 334.

Decades ago, and before *Miranda* v. *Arizona*, 384 U.S. 436 (1966), the Supreme Court developed an exclusionary rule generally rendering inadmissible in a Federal criminal case a confession made during periods of detention that violated the prompt presentment requirement of Rule 5 (a) of the Federal Rules of Criminal Procedure. See *McNabb* v. *United States*, 318 U.S. 332 (1943); *Mallory* v. *United States*, 354 U.S. 449 (1957). The Court's rule, known as the *McNabb-Mallory* rule and adopted in the exercise of the Court's supervisory authority over Federal courts, excluded confessions made when a person arrested on a Federal offense was not taken "without unnecessary delay" before a magistrate as rule 5. (a) required. See *United States* v. *Alvarez-Sanchez*, 114 S. Ct. 1599, 1602 (1994). In 1968, Congress responded to the *McNabb-Mallory* rule by enacting 18 U.S.C. § 3501 (1968). Section 3501 (c) provides that a voluntary confession, made by a person within six hours following arrest or other detention, "shall not be inadmissible solely because of delay in bringing such person before a magistrate." *Id.*[4] Section 3501 (c) thus provides a safe harbor for interrogation during a six-hour period (*id.*), although there is disagreement among the United States Courts of Appeals as to whether the *McNabb-Mallory* rule still applies to confessions obtained more than six hours after an arrest on Federal charges. See *United States* v. *Alvarez-Sanchez, supra* at 1605 (Ginsberg, J., concurring).[5]

The Supreme Court of Pennsylvania has adopted a six-

[4]Most States that have addressed the admissibility of a confession obtained during an unlawful prearraignment delay do not have a rule of automatic exclusion. See, e.g., *People* v. *Kendrick*, 56 Cal. 2d 71, 85 (1961); *State* v. *Franklin*, 463 A.2d 749, 753 (Me. 1983); *People* v. *Cipriano*, 431 Mich. 315, 333-334 (1988); *State* v. *Mendacino*, 288 Or. 231, 236 (1979). See also Annot., 28 A.L.R.4th 1121, 1131-1161 (1984).

[5]The *McNabb-Mallory* rule is not constitutionally based. See *United States* v. *Alvarez-Sanchez*, 114 S. Ct. 1599, 1602 (1994). The defendant disavows any argument that his constitutional right to counsel, or any other constitutional right, was violated. Nor does the defendant claim a failure to comply with the requirement of art. 14 of the Massachusetts Dec-

hour rule providing that, although a defendant's arraignment is unnecessarily delayed, any statement, otherwise admissible, that the defendant made within six hours of arrest need not be suppressed. *Commonwealth* v. *Duncan*, 514 Pa. 395, 406 (1987). "[A] delay of six hours between arrest and arraignment is an acceptable period of time to accommodate conflicting interests without creating such a coercive effect so as to violate the rights of an accused. Therefore, the focus should be upon *when* the statement was obtained, i.e., within or beyond the six hour period. If the statement is obtained within the six hour period, absent coercion or other illegality, it is not obtained in violation of the rights of an accused and should be admissible. In keeping with the underlying objectives of the rule, only statements obtained after the six hour period has run should be suppressed . . . ." (Emphasis in original.) *Id.* A Pennsylvania appellate court has held that any purported waiver of the six-hour rule executed after the six hours has passed is not effective. *Commonwealth* v. *Goldsmith*, 422 Pa. Super. 191, 197-198 (1993).

We adopt for the future, with respect to police questioning of an arrested person, a rule similar to those in the Federal and the Pennsylvania systems discussed above. An otherwise admissible statement is not to be excluded on the ground of unreasonable delay in arraignment, if the statement is made within six hours of the arrest (day or night), or if (at any time) the defendant made an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay. This rule will (a) largely eliminate debate over the reasonableness of any delay, (b) bar admission of a statement made after the six-hour period unless there is a waiver of prompt arraignment, and (c) apply without regard to when either the court is in session or the arrest was made. See *Commonwealth* v. *Davenport*, 471 Pa. 278, 287-288 (1977). We will depend on the requirements of Miranda warnings, voluntariness, and the requirements of G. L. c. 276, § 33A, to protect against unfair or coercive questioning during the six hours after arrest. The six-hour period itself will place an outside limit on any incentive to question an unwilling arrestee. If, when arrested, the person is incapacitated because

laration of Rights and the Fourth Amendment to the Constitution of the United States that there be a prompt determination of probable cause following a warrantless arrest. See *Jenkins* v. *Chief Justice of the Dist. Court Dep't*, 416 Mass. 221 (1993).

of a self-induced disability, such as by the consumption of drugs, the six-hour period should commence only when the disability terminates. Also, if for reasons not attributable to the police, such as a natural disaster or emergency, interrogation during the six-hour period is not possible or must be suspended, the six-hour period should be tolled appropriately. It is most important to recognize that, but for the exceptions just noted, the period of safe harbor questioning commences on arrest and concludes six hours later without regard to when court is in session.

We must confront the separate question whether the motion judge's order to suppress the defendant's statements should stand. We shall assume, as did the Appeals Court, that the motion judge's ruling was not influenced by his erroneous view of the application of G. L. c. 276, § 33A. We agree with the defendant that this appeal does not implicate any constitutional right to counsel, as the Appeals Court appears to have thought. We have rejected the idea that all questioning of an arrested person is forbidden when the appropriate court for arraignment is in session.

The police questioning in this case, however, did not occur during the six-hour "safe harbor" period after arrest that we have adopted for the future. The defendant was held overnight and then for at least five hours while court was in session. On the other hand, the entire process of questioning concerning the burglaries, the site identification, the preparation of a written statement, and perhaps even arraignment occurred within a six-hour period. The defendant waived his Miranda rights. He freely, intelligently, and voluntarily confessed to the crimes with which he is charged. The judge found that the police did not threaten or coerce the defendant. A judicial determination of probable cause to justify the defendant's arrest had already been made (and the arraignment occurred within twenty-four hours of the defendant's arrest, see *Jenkins* v. *Chief Justice of the Dist. Court Dep't*, 416 Mass. 221 [1993]). Thus one reason for the prompt arraignment rule — unlawful detention — is not involved in this case.

The questioning about criminal activity only concerned events that had no relation to the pending assault and battery charges. In this case, therefore, we need not decide whether there should be a different rule when a defendant is arrested and questioned concerning a matter as to which a judicial

magistrate has already found probable cause and issued a warrant for the defendant's arrest. See, however, *Commonwealth* v. *Ortiz, post* 64 (1996).

The proper disposition of this case turns on whether any police misconduct was sufficiently flagrant to require suppression as a deterrent against similar future conduct. Although the Springfield police obviously delayed arraignment to permit them to question the defendant, they had little basis to conclude that this conduct was a violation of rule 7 (a) (1). In *Commonwealth* v. *Fryar,* 414 Mass. 732, 743 (1993), less than five months before the questioning of the defendant, this court upheld the denial of a motion to suppress a statement given to the Springfield police department well after the court was open and the defendant could have been arraigned. Admittedly, in the *Fryar* case, there was what we called an implied finding that there was no intentional delay in the arraignment. *Id.* at 743. However, the factual circumstances of the two cases (as opposed to the motion judges' conclusions) are not so different that the police conduct in the case before us can fairly be labeled egregious or flagrant. With a new rule concerning questioning before arraignment now in place, we see no reason to apply an exclusionary rule in this case for the purpose of discouraging future improper questioning prior to arraignment. The arraignment of the defendant during the first session of the court to which he could have been brought was not so unreasonable as to require suppression of his voluntary statements given after he had received Miranda warnings.

The order of the Superior Court allowing the defendant's motion to suppress is vacated. An order shall be entered in the Superior Court denying the defendant's motion to suppress.

*So ordered.*

O'CONNOR, J. (concurring). I agree with the court's order reversing the order of the Superior Court and requiring the entry there of an order denying the defendant's motion to suppress. I write separately only to register my agreement with the Chief Justice's view that an otherwise admissible statement obtained during the six-hour safe harbor period should be admissible but a pre-presentment statement made thereafter should be inadmissible regardless of any waiver of prompt presentment.

LIACOS, C.J. (dissenting). I agree with most of the court's discussion of this case. The court has taken an important step in clarifying the ground rules for custodial interrogation in order to preserve the prompt presentment required by Mass.

R. Crim. P. 7, as amended, 397 Mass. 1226 (1986).[1] Law-enforcement officials and criminal defendants will now have a clearer rule that should minimize confusion and litigation. I disagree, however, with two aspects of the court's opinion.

The court states, in dictum, that an otherwise admissible statement gathered outside the six-hour safe harbor period can be admitted so long as there is an informed and voluntary waiver of prompt presentment. The court implies that this waiver can occur even after the safe harbor period has lapsed. Such practice will undoubtedly eviscerate the rule the court announces today. See *Commonwealth* v. *Goldsmith*, 422 Pa. Super. 191, 200-201 (1993) (waiver after six hours is inimical to safe harbor of *Commonwealth* v. *Duncan*, 514 Pa. 395, 406 [1987]). It seems highly unlikely that a person in custody who voluntarily waives the right to remain silent will be unwilling to provide a complementary waiver of rule 7 rights.[2] The police could continue questioning an uncooperative detainee beyond the six-hour period and, when the detainee finally makes a statement, obtain both waivers. The incentive to delay presentment would still exist, and the safe harbor rule would do nothing to promote compliance with rule 7. If we are to promulgate new rules, we ought not make them hollow from the outset.

My disagreement with the court's treatment of waiver goes deeper. I believe that any waiver is antithetical to the notion of a safe harbor — a bright-line rule to aid police and reduce litigation. Any doctrine allowing waiver of the six-hour limit to questioning will place a major additional burden on both

[1] Although the court refers to an arraignment, I believe the more accurate term for an "initial appearance" is the word "presentment." See and compare Mass. R. Crim. P. 7 (a) (1), as amended, 397 Mass. 1226 (1986) (initial appearance) and Mass. R. Crim. P. 7 (a) (3) (d), 378 Mass. 856 (1979) ("arraignment"). Although the two proceedings may occur at the same time, their functions are not identical. See 1 C.A. Wright, Federal Practice and Procedure § 71 (2d ed. 1982).

Note that at arraignment there is a right to counsel, but presentment is the prior step at which indigency determinations are made and there has not yet been time for meaningful consultation with counsel.

[2] There is no requirement for counsel to advise regarding waiver of prompt presentment. Under these conditions, comprehension of the esoteric right involved, and informed waiver, become too improbable. Of course, detainees could litigate the issue of informed waiver, as Rosario did in this case. But most such litigation devolves into a credibility contest between police and the detainee, and, as here, the detainee loses that fight.

law enforcement and judicial resources. In many cases involving admissions or confessions, there will now be two waivers to litigate, not just one. This sort of proceeding already consumes a great amount of time and resources, not only in motion practice, but also because interlocutory appeal is frequently an issue. See G. L. c. 278, § 28E (1994 ed.); Mass. R. Crim. P. 15, 378 Mass. 882 (1979). The new voluntariness inquiry, addressing the subtle and complex concept of "presentment," will not produce bright-line jurisprudence. While in the short run the possibility of waiver might seem appealing to the government, the consequences, when summed over the aggregate of cases, loom large.[3]

Perhaps most importantly, allowing waiver will actually impede many interrogations. An informed waiver would require that police explain the right to appear in front of a magistrate at a particular time. See *Commonwealth* v. *Ortiz, post* 68 n.3 (1996). With that knowledge, a sophisticated or "experienced" detainee may find it easier to "wait out" the questioning. Less experienced criminal defendants would, of course, be at a major disadvantage. The current law of "knowing, intelligent, and voluntary" waiver of Miranda rights asks whether a detainee understands the right to remain silent and the right to consult with counsel. E.g., *Commonwealth* v. *Bui,* 419 Mass. 392, 396-397, cert. denied, 116 S. Ct. 170 (1995). Yet experience and our caselaw tell us that even these simple concepts can be difficult for those less educated, and especially those who do not speak English or come from cultural backgrounds where procedural rights are not so common. Compare *Commonwealth* v. *Sim,* 39 Mass. App. Ct. 212, 219 n.6 (1995), with *Commonwealth* v. *Alves,* 35 Mass. App. Ct. 935, 935-937 (1993). See generally Supreme Judicial Court Commission to Study Racial and Ethnic Bias in the Courts, Equal Justice 34-36, 47-48 (1994). A waiver doctrine with respect to rule 7 will ask many of those same detainees to make

___

[3]Additionally, the concept of a waiver is inimical to the policy judgment (as the court seems to admit) found in the Uniform Rules of Criminal Procedure and the ALI Model Code of Pre-Arraignment Procedure. See *ante* at 54-55. As the *Goldsmith* court put it: "[T]he six-hour arraignment rule recognizes the inherently coercive nature of prolonged custodial police interrogation. In this regard, it affords protection similar to *Miranda,* in that the constitutional right not to be compelled to give evidence against oneself is served." *Commonwealth* v. *Goldsmith,* 422 Pa. Super. 191, 199 (1993).

an informed decision, without advice of counsel, regarding the right to "presentment" or "arraignment" — rather unfamiliar concepts to even the educated and native-born. And attempts to clarify the meaning of those technical legal terms will likely be of no avail. The rights primarily available at presentment are the very same rights already provided by Miranda warnings, the right to remain silent and the right to counsel.[4] If we require the police to explain presentment, we are simply asking them to repeat Miranda, and we will have created a new rule that simply grafts an unnecessary and duplicative layer onto an already complex system of criminal procedure. It would seem more sensible and effective to accept the view of the Supreme Court of Pennsylvania referring to the safe harbor rule by stating: "[I]t was intended to interrupt [interrogation] after a reasonable period of time to allow the suspect to be advised of his custodial rights by an impartial judicial officer, as opposed to police officials, and in appropriate cases to establish the conditions of his release pending trial." *Commonwealth* v. *Duncan,* 514 Pa. 395, 404 (1987), quoting *Commonwealth* v. *Jenkins,* 500 Pa. 144, 148 (1982).

For police to explain that a detainee has a right to a court appearance is accurate, but unfortunately strongly suggests that the detainee will have to answer at that time for the crime charged. It would be very simple for police to gain advantage out of such a "right of the detainee." The decision to waive presentment could be framed as a choice between (1) an appearance at which the detainee will be formally charged (presentment closely followed by arraignment) and (2) continued cooperation with the police. The detainee proclaiming innocence would likely choose waiver of presentment, to avoid formal confrontation with the charges.

Lest this be seen as a fantasy about the inner workings of the detainee's mind, the facts of *Commonwealth* v. *Hodgkins,* 401 Mass. 871 (1988), are worthy of note. In that case a detainee waived presentment in order to avoid the publicity that would attend an appearance at the courthouse. *Id.* at 877 & n.6. This demonstrates that a detainee may want to waive

---

[4]This is true even though the right to presentment is not constitutional in origin. This common law device primarily effectuates the right to counsel, as indigency determinations are made, counsel is assigned, and terms of bail are set.

Commonwealth *v.* Rosario.

prompt presentment for reasons that the police can manipulate.[5]

As noted, the waiver issue is mere dictum in this case. I do not agree with this dictum. My second disagreement with the court's opinion directly affects the result here. The majority finds that this rule 7 violation does not deserve the suppression remedy because the facts here are very close to those in *Commonwealth* v. *Fryar*, 414 Mass. 732, 743 (1993).

I respectfully disagree with the majority's reasoning with respect to remedy. If *Fryar* was close to the line of permissible behavior, we should not thereafter judge against *Fryar*. That moves the line in the wrong direction. By way of analogy, we might in some case admonish a prosecutor for particular remarks in closing argument, but state that in the context of the over-all argument there was no reversible error. I would hope that after such an admonition we would not compare the next case, with slightly stronger language used to inflame a jury, against the borderline case. We would instead compare the next set of facts to entirely proper argument. So it should be here. In *Fryar*, we discerned an "implied" finding of the motion judge that the police did not deliberately delay presentment. *Id.* at 743. "Implied" findings hardly provide a mold from which to cast police procedures.

Law enforcement officers should be able to rely on our case-law with clear lines of demarcation setting forth what is permissible and what is not. But when police decide to test the boundaries, or engage in some new practice, they should reasonably rely on the rule itself, not the outer boundaries of the judicial gloss. As the court notes, the requirement of prompt presentment is of long standing. E.g., *Tubbs* v. *Tukey*, 3 Cush. 438, 440 (1849). It is true that in some cases we have held delays longer than occurred here not to justify suppression. We must, however, judge the police against the core of the rule. Rule 7 requires presentment at the next session of court, and the Reporters' Notes make clear that presentment

---

[5]For example, the police could call the press to the courthouse and then inform the detainee of the impending publicity. Cf. *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court*, 421 Mass. 502, 505-507 (1995) (derivative media right of access to all arraignments, even in nontraditional settings).

should occur as soon as possible.[6] The motion judge made a factual finding, supported by the record, that the police intentionally delayed presentment, and the incriminating statements came more than six hours after arrest.[7] Rule 7 itself is a codification of our common law, and I would, in the common law tradition of remedy, apply the rule we announce here to the case before us. I would therefore affirm the motion judge's order suppressing the defendant's statements and fruits thereof. Accordingly, I dissent.

---

[6]Although we might reject the Reporters' Notes when we make a judicial determination of the rule's requirements, until that time reasonable police practice must take the commentary into account. See Reporters' Notes to Mass. R. Crim. P. 7, Mass. Ann. Laws, Criminal Procedure, at 106 (Law. Co-op 1979).

[7]The entire interrogation of Rosario occurred outside the safe harbor. Therefore the precise contours of that haven are not important. Compare *Goldsmith, supra* at 200-201 (presentment should occur within six hours, but whatever statements detainee makes within that period are admissible) with *Pettyjohn* v. *United States*, 419 F.2d 651, 656 (D.C. Cir. 1969), cert. denied, 397 U.S. 1058 (1970) (voluntary statement is admissible if commenced within period of permissible delay).