Welch, J.
This motion presents a difficult issue under the so-called “safe harbor” rule established in Commonwealth v. Rosario, 422 Mass. 48 (1996). In Rosario, the Supreme Judicial Court established a bright line rule that no unreasonable delay existed if the arraignment occurred within six hours of arrest. Any voluntaiy statement taken during this six-hour window was deemed valid. The Court also established that an otherwise admissible statement would not be excluded if the defendant “made an informed and voluntaiy written or recorded waiver of his right to be arraigned without unreasonable delay.” The present case presents a situation where a defendant, eager to speak to a police officer he knows, was fully advised of his Miranda rights and waived those rights. He was then (since he had been in custody for over six hours) advised of his right to a prompt presentation in Court as required by Rosario. The so-called “presentment warning” that was given, orally and in writing, contained an error. The issue in this case is whether the error within that presentment warning rendered the defendant’s waiver of his rights involuntaiy and constituted a violation of the bright line rule established in Rosario.
FACTUAL FINDINGS
On the morning of January 28, 2002, Salem police detectives were called to a scene of a stabbing. Salem Police Detective Eric Connelly found the victim in an apartment bleeding and observed a bloody knife on the front porch. After obtaining information from persons at the scene, defendant Jonathan Betances became the primary suspect. An arrest warrant was obtained. The Salem police obtained information that Betances fled the scene of the alleged crime. The defendant was not apprehended during the day shift on January 28th.
Detective William Jennings of the Salem Police Department was working the evening shift (4:00 p.m. to 12:00 a.m.) on the evening of January 28th. As he began his shift, he was informed that the day shift detectives were looking for the defendant in connection with charges relating to a house break and a stabbing of a woman on Harbor Street in Salem. Detective Jennings was asked to pick up Jonathan Betances if he could. Detective Jennings did not know the defendant.
*326 Later in the evening, Detective Jennings received information relating to the defendant’s possible location. The information indicated that the defendant might be located in the home of a relative in a residence in Salem, Massachusetts. Detective Jennings thereafter went to arrest the defendant. The defendant was taken into custody at approximately 9:30 p.m. He was then transported to the Salem Police station and booked at 9:50 p.m.
Upon being placed into custody, the defendant requested to change his clothes. Detective Jennings refused this request and told the defendant that his family could bring him fresh clothes at the police station. While the defendant was being booked, Detective Jennings noticed what appeared to be blood on the defendant’s sneakers and pants. Thereupon, Detective Jennings asked the defendant for his clothes. As this judge has already ruled in a related motion, this seizure was plainly appropriate as it was a search incident to his arrest. This search related to evidence of the crime for which he was being arrested.
The defendant remained in the custody of the Salem Police throughout the evening of January 28th and into the morning of January 29th. At approximately 8:00 a.m., Detective Baglione of the Salem Police Department arrived at the police station .to begin his morning shift. When he arrived, he was'informed that the defendant had been apprehended. Detective Baglione was not the lead investigator on the case, but he did know the defendant. Detective Baglione’s responsibilities included “outreach” with the Salem public schools. The defendant, a Salem high school student, was familiar with Detective Baglione.
Detective Baglione then went to the lock-up facility to visit the defendant. The defendant, who appeared very comfortable with the detective, stated: “I want to tell you what happened.” Detective Baglione then interrupted the defendant and told him not to talk until he was taken to the interview room and after he was informed of his rights. Detective Baglione then took the defendant upstairs to an interview room. Detective Connelly of the Salem Police was in the interview room. Detective Connelly was the chief investigator on this incident.
Detective Connelly, Detective Baglione and the defendant (who was not handcuffed but was in custody) then sat down at the table in the interview .room. Again, the defendant indicated that he wanted to talk to the detectives about what had happened. Again, Detective Baglione interrupted the defendant and told him not to talk until he was read his rights. Thereupon, Detective Baglione read the defendant his Miranda rights from a pre-printed form. See Exhibit 1. Detective Baglione read each of the Miranda warnings and inquired from the defendant whether he understood that right. The defendant indicated that he understood each and every one of his Miranda rights and stated that he wished to speak with the police. After the defendant was orally advised of his rights, he was given the Miranda warning sheet and asked to sign it. The defendant read the sheet and then signed the sheet. The defendant also dated the sheet and set forth the time at which he signed it. The time was 8:20 a.m. The defendant’s signature was witnessed by Detectives Connelly and Baglione.
Detective Baglione then immediately began to inform the defendant of his right to a prompt arraignment. He did this by reading from a pre-printed form of the Salem Police Department with the heading “presentment warning.” See Exhibit 2. Again, Detective Baglione slowly and clearly read each matter related to the defendant’s right to a speedy arraignment. Soon after the detective began, the defendant interrupted him and complained that he already had been informed of his rights. Detective Baglione explained that this was a different set of rights and cautioned the defendant to wait and listen.
As a review of Exhibit 2 shows, the defendant was informed that he had a “right to a prompt presentment in Court, that is to be brought to Court as soon as possible. If the Court is not in session, you have a right to be brought to Court as soon as Court opens.” The defendant also was advised that during his presentment in Court he would be entitled to a lawyer, and if he could not afford one, one would be appointed to him at no cost. He was also informed that he would have a right to a hearing on bail.[1]
After being advised of his right to a speedy arraignment, the form went on to state, “if you waive your right to a prompt presentment, you will be brought to Court no later than: [date] [time].” It was at this point that Detective Baglione made an error. As to the date, he filled in the blank space correctly, namely January 29,2002. As to the time, Detective Baglione incorrectly filled in (and stated to the defendant) a time of 8:25 a.m.[2] In other words, Detective Baglione informed the defendant that he would be brought to Court no later than 8:25 a.m. that morning. 8:25 a.m. was the time at which Detective Baglione was reading these rights to the defendant. Thus, his statement to the defendant made no sense. After all, if the defendant was to waive his right to a prompt presentment and make a statement to the police, he could not conceivably be brought to Court “no later than” the very minute he was given his rights.
The form then went on to ask the defendant if he wished to talk to the police and concluded with the line “yes I wish to speak with you and waive my right to a prompt presentment.” Each of these rights were slowly read to the defendant. The defendant comprehended these rights and responded that he did wish to waive his right to a prompt presentment and to talk with the Detectives. After he was provided these presentment warnings orally, he was given an opportunity to read the document (Exhibit 2). The defendant did so and then voluntarily signed the document. *327 Again, the defendant dated and timed his signature. The time put forth by the defendant was 8:26 a.m. The defendant then provided a statement to the police detectives. See Exhibit 3. Sergeant Connelly made notes regarding the defendant’s statement. The notes were later placed into 1yped form and the defendant reviewed and signed the typed statement at 9:45 a.m. The defendant was given an opportunity to review the typed statement. After reviewing his statement, he voluntarily signed the statement, dated the statement, and placed the time of 9:45 a.m. at the bottom of the statement. As can be seen from the review of Exhibit 3, his statement was in part inculpatory and in part exculpatory. The defendant admitted stabbing a “lady” but stated that it was by mistake. The defendant’s statement read in part: “I did not mean to stab that lady. I got scared, saw the knife and grabbed it, I think she ran into it. I feel bad for what I did. I didn’t mean to stab her.” Throughout the time the defendant made his statement, he was sober, alert, oriented and cooperative. He did not exhibit any signs of being scared. At no time did the police engage in any intimidation or make any threats or promises. The police did not engage in any deceptive conduct. His statement was made completely voluntarily and as a result of his own rational intellect.
Soon after making his statement, the defendant was transported to the Salem District Court for arraignment.
LEGAL ANALYSIS
This judge finds, beyond a reasonable doubt, that the defendant was fully advised of his Miranda rights and that he knowingly and voluntarily waived those rights. The defendant’s statement was completely voluntary. He initially stated that he wanted to talk to Detective Baglione and Detective Baglione stopped him from making a statement before the detective could carefully read him his Miranda rights and have him sign a written waiver. The defendant understood each of those rights and voluntarily decided to waive those rights and make a statement. As can be seen from the content of the statement, the defendant wished to provide an excuse for his actions. I find beyond a reasonable doubt that the statement was made voluntarily and as a result of the defendant’s own free will and rational intellect.
The difficult issue is whether this voluntary statement should be suppressed because of the error contained in his written waiver of his right to a prompt arraignment. There is no doubt that the Rosario decision creates a bright line rule. If the defendant does not waive his right to a prompt arraignment on a written form or in a recorded statement, and he is questioned six hours after his arrest (barring an incapacity or natural disaster), any statement obtained must be suppressed. The Rosario decision, however, does not set forth precisely what form his right to a prompt arraignment should take. The form used by the Salem Police in this case more than adequately informed the defendant of his right to a prompt arraignment. Although it is certainly good policy, the Rosario decision does not require the police to inform the defendant of when he will be transported to Court should he waive his right to a prompt presentment. It was on this part of the form that Detective Baglione erred. His error was understandable. He erroneously set forth the time he was actually reading the list of rights to the defendant instead of the time the defendant could have expected to be brought to Court. It was an error that was obvious to anyone focused on this particular matter. Somewhat surprisingly, however, no one noted the error. Detective Connelly listened to the rights being read and signed the presentment warning and did not note the error. Needless to say, Detective Baglione did not note his error. Nor did the defendant. The only logical explanation for this is that everyone involved understood the defendant’s right to a prompt arraignment in general and his ability to waive that right and give a statement if he wished. They were not focused upon the specific time the defendant would be transported to Court should he wish to give the statement he already indicated that he wished to give.
After being advised of the erroneous information on Exhibit 2 regarding when he would be brought to Court, the defendant was then asked twice whether he wished to waive his right to a prompt arraignment and make a statement. The defendant responded affirmatively twice and then made such a statement. After the defendant made his voluntary statement, he was in fact promptly transported to the Salem District Court for arraignment.
Although the error in reading the “presentment warning” was regrettable, it does not provide a basis to suppress the defendant’s statement. The defendant was accurately informed of his right to a prompt arraignment. He was correctly advised that he would be appointed a lawyer if he could not afford one at that arraignment. He was also advised that he would have a hearing on bail at that time. He was then advised he could waive these rights and speak to the police. The defendant responded that he wished to waive those rights and speak to the police. Indeed, the defendant expressed frustration with all these legal formalities. The defendant early on indicated a desire to tell his side of the story to Detective Baglione and was told twice that he had to wait until his rights were read to him. After receiving his Miranda rights and waiving those, the defendant complained and was instructed to listen to his right to a prompt presentment in Court. The defendant then waived that right knowingly and voluntarily and gave his statement. A written waiver to a right to a prompt arraignment is all that Rosario requires. One can imagine situations where an error concerning when the defendant would be arraignment (assuming he gave up his presentment right) might be *328 material. But the error was not material in the circumstances of this case. In this case, the defendant was adequately informed of his right to a prompt arraignment and the defendant, on a written form, waived that right. Therefore, under the so-called “safe harbor rule” established in Rosario, there is no basis to suppress his statement.
CONCLUSION
For the reasons set forth above, this motion is denied.

As it is shown in Exhibit 2, the written form does not contain a check mark after this particular question. I credit Detective Baglione’s testimony that he read this right to the defendant and that the defendant indicated that he understood this right to a bail hearing. I accept the detective’s testimony that he simply forgot to check “yes” after this particular right.

Detective Baglione made the mistake by looking at his watch and noting the current time, not the estimate of when the defendant would finish his statement. When the rights were being read, the District Court was not yet in session.