Agnes, A.J.
INTRODUCTION
The defendant Paul Bilodeau and several codefendants are charged with drug offenses arising out of events that took place on August 23, 2002, in the parking lot of Shaw’s Supermarket in Auburn, Massachusetts. The defendant Bilodeau filed a pretrial motion to suppress physical evidence and incriminating statements made while in custody at the Auburn police station on the ground that they were obtained beyond the six-hour “safe harbor” period described in Commonwealth v. Rosario, 422 Mass. 48, 56 (1996).[1] Because this court believes the following question is of substantial importance to the administration of justice and doubtful, and is not likely to be addressed other than by a Report, this Court is exercising its discretion to report the following question of law to the Appeals Court pursuant to Mass.R-Crim.P. 34:
Whether the “safe harbor” rule established in Commonwealth v. Rosario, 422 Mass. 48, 56 (1996), should be modified or abandoned to allow the admission of otherwise voluntary statements obtained after a valid waiver of Miranda rights, in circumstances in which the defendant requests to speak with the interviewing police detective and makes an otherwise voluntary and admissible statement within the six-hour period but is interviewed again outside the six-hour period without a formal waiver of the safe harbor rule, where there is no evidence that police purposely delayed arraignment and no evidence that the police used physical or psychological coercion to obtain the statement.
*58 FINDINGS OF FACT[2]
Based on the credible evidence presented at the hearing on the defendant’s pretrial motion to suppress, the Court makes the following findings of fact.
At approximately 4:30 p.m. on August 23, 2002, Detective Vincent Ross of the Auburn Police Department was conducting surveillance in the parking lot of Shaw’s Supermarket. His principal purpose was to detect shoplifters due to recent reports of theft by store officials. After requesting information from a dispatcher on a suspicious vehicle in the parking lot, Detective Ross learned that the vehicle was owned by defendant Paul Bilodeau (later identified as the driver) of Oxford. Shortly after identifying the vehicle, Detective Ross witnessed an alleged drug transaction between Bilodeau and another man (later identified as defendant Johnathan Peguero), who walked away from the vehicle after making an exchange at the driver’s window.
After witnessing the alleged transaction, Detective Ross identified himself as a police officer and approached the driver’s side of the vehicle where Bilodeau was seated, along with a passenger later identified as defendant Tremblay. Upon observing what appeared to be a bag of cocaine inside the vehicle, Detective Ross ordered the occupants out of the vehicle. Detective Ross and other officers called to the scene recovered a plastic bag of cocaine and a Marlboro cigarette package containing two other bags of cocaine from inside the vehicle. At approximately the same time, Peguero was stopped by other officers as he tried to exit the Shaw’s Supermarket. Peguero’s vehicle was seized after drug-sniffing dogs reacted positively upon inspecting the vehicle.
The three defendants were taken back to the police station and booked. Defendant Bilodeau was stopped and detained at approximately 4:40 p.m. He was booked and advised of his Miranda rights at the police station by Officer John Kelleher between 5:30 p.m. and 5:50 p.m. He made no statement at that time. At approximately 7:30 p.m., while in police custody, Bilodeau stated that he wanted to talk to the police. Officer Kelleher took him from the cell area to an upstairs office in the police station. The room contained a table and 3 chairs. The defendant was again advised of his Miranda rights. The time was 7:50 p.m. The defendant said he understood his rights and indicated his interest in speaking with the police. He seemed to understand Officer Kelleher and did not appear to be in any distress. The defendant did not appear to be intoxicated or under the influence of any substance. The police did not threaten him or mislead him in any way. There is no evidence that the defendant was suffering from any disability that may have affected his ability to understand and validly waive his Miranda rights.
During this initial conversation at the police station, Bilodeau told Detective Ross that there were drugs located inside Peguero’s vehicle. He also admitted to buying three bags of drugs from Peguero in the parking lot. Bilodeau agreed to give a written statement. However, before the written statement could be produced, Detective Ross was called away by other officers and asked to inspect one of the vehicles that the police had seized. By the time he returned to defendant Bilodeau, it was about 11:30 p.m. There was no observable change in the defendant’s physical condition or appearance. The defendant did not object or express any reservations to the resumption of the interview. The written statement began at 11:35 p.m. and was completed at 11:45 p.m. It was handwritten by defendant Bilodeau. The contents of this recorded statement are essentially the same as the defendant’s earlier oral statement.
DISCUSSION
Massachusetts courts have long recognized that police have a duty to bring an arrested person before a court as soon as reasonably possible to prevent unlawful detention and to eliminate the incentive and opportunity for the application of improper police pressure. Commonwealth v. Perito, 417 Mass. 674, 680 (1994), citing Commonwealth v. Cote, 386 Mass. 354 (1982). Under Mass.R.Crim.P. (7)(a)(l), “[a] defendant who has been arrested shall be brought before a court if then in session, and if not, at its next session.” In Rosario, the Supreme Judicial Court established a rule admitting statements obtained within a six-hour safe harbor period, if otherwise voluntary and made in compliance with Miranda. Commonwealth v. Rosario, 422 Mass. 48, 56 (1996); Miranda v. Arizona, 384 U.S. 436 (1966). The core of the rule provides that “(a]n otherwise admissible statement is not to be excluded on the ground of unreasonable delay in arraignment, if the statement is made within six hours of the arrest (day or night), or if (at any time) the defendant made an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay.” Rosario, 422 Mass, at 56. The exclusionary aspect of the rule appears to bar virtually all statements made after the six-hour period. Id. (“this rule will . . . bar admission of a statement made after the six-hour period unless there is a waiver of prompt arraignment. . .”[3]
Prior to Rosario, the Court identified factors to guide the determination of the reasonableness of any delay in arraigning an arrested person. These factors were the same factors used to determine the admissibility of a confession. See Commonwealth v. Sylvia, 380 Mass. 180, 183-84 (1980), citing Commonwealth v. Fielding, 317 Mass. 97, 113-14 (1976). These factors included: 1) whether Miranda warnings were given; 2) the circumstances, including the passage of time, between the illegal arrest and the confession; and 3) the purpose and flagrancy of the official misconduct. Commonwealth v. Hunter, 426 Mass. 715, 720-21 (1998).
*59 The Rosario Court found that the prior approach “involves a measure of uncertainty and the likelihood of uneven application in practice,” since trial court judges have different views on the reasonableness of a delay. Id. at 54. The six-hour period was needed, in part because “police and prosecutors should be explicitly informed what they are, and are not, authorized to do, rather than being forced to await a court interpretation of what constitutes ‘unnecessary’ or ‘undue’ delay on a case-by-case basis.” Id. at 54-55, citing Model Code of Pre-Arraignment Procedure §140.8(4) (Proposed Official Draft 1975). The six-hour rule was modeled after a similar approach taken by the Supreme Court of Pennsylvania. See Commonwealth v. Duncan, 514 Pa. 395, 406 (1987). The Rosario Court also made reference to 18 U.S.C. 3501(c), which provides that confessions rendered within six hours following detention on federal charges shall not be deemed inadmissible solely on the basis of delay in bringing the suspect before a magistrate.[4] Rosario, 422 Mass, at 55, citing U.S. v. Alvarez-Sanchez, 511 U.S. 350, 357 (1994).
In the present case there is no claim by defendant Bilodeau that the police purposely delayed either the arraignment and presentment or the questioning to gain an advantage. In Rosario, the trial judge specifically found that the police intentionally delayed arraignment in order to obtain a confession. Rosario, 422 Mass, at 51. There is no factual dispute in this case over the reasonableness of the delay in the arraignment. The police could not have brought the defendant to court immediately after his arrest because court was not in session at that hour.
Rosario recognized that a defendant could waive his right to a prompt arraignment even after expiration of the six-hour period. Rosario, 422 Mass, at 56. Although the police did not attempt to secure a written or recorded waiver, there is a question whether there may be the functional equivalent of a waiver and whether such a waiver occurred here when the defendant himself sought to speak to Detective Ross, waived his Miranda rights, and confessed, all within the six-hour period. When Detective Ross returned from his investigation approximately three and one-half hours later, the defendant validated his earlier confession by committing it to writing. Under these circumstances, the defendant’s conduct demonstrated his willingness to confess, despite the time that elapsed since his arrest. However, the Rosario rule in its present case does not appear to allow exceptions to accommodate situations where, as here, a written confession is obtained through non-coercive police conduct and procedures outside the six-hour period following an oral confession that was validly obtained within the six-hour period.[5]
Massachusetts decisions subsequent to but not subject to the Rosario rule have declined to suppress statements obtained after six hours, on the basis of additional factors commonly cited by other courts.[6] See e.g., Commonwealth v. Beland, 436 Mass. 273, 283 (2002) (19-hour delay not unreasonable where Miranda rights were acknowledged and there was no indication that police delayed arraignment in order to yield a confession). Other jurisdictions have recognized the shortcomings of a per se, time-based test and abandoned that approach. Pennsylvania has since abandoned its decisions, including Duncan, the case adopting the model rule cited in Rosario, that held that statements obtained after a delay exceeding six hours were per se inadmissible. Commonwealth v. Perez, 845 A.2d 779, 787 (Pa. 2004). The six-hour rule was replaced with a totality of the circumstances analysis, where arraignment delay is considered as one factor to be considered in determining whether the challenged evidence was the product of coercion. Id.
The Perez Court cited its earlier decision in Hughes as evidence that the many exceptions required by adherence to a six-hour rule amounted to a totality of circumstances approach. Id. at 785-86. “An involuntary confession can be extorted in five minutes or six hours. Time is important but not of the essence.” Id. at 787, citing Hughes, 555 A.2d at 1283 (McDermott, J., concurring). The Court expressed concern that application of a time-specific rule would shield the guilty from otherwise admissible evidence for reasons irrelevant to that individual’s circumstances. Id. at 784. The Court noted that application of a per se exclusionary rule is unwarranted where the delay has not implicated fundamental constitutional concerns or substantially prejudiced the defendant. Id. at 787 n.7. The Court also found that the goals of the six-hour rule, such as providing guidance to law enforcement officials and eliminating needless litigation, could also be met when delayed arraignment is considered among other factors in evaluating police conduct. Id
Most jurisdictions have held that arraignment delay is merely a factor to be considered in determining the admissibility of a confession. See “Admissibility of Confession or Other Statement Made by Defendant as Affected by Delay in ArraignmentModern State Cases,” 28 A.L.R.4th 1121 (2004); see People v. Thompson, 27 Cal.3d 303, 330 (1980) (delay treated as only one of the factors to be considered in determining voluntariness); People v. Hopkins, 58 N.Y.2d 1079, 1081 (1983) (“absent extraordinary circumstances, a delay in arraignment is but a factor to consider on an issue of underlying involuntariness”); People v. Cipriano, 431 Mich. 315, 322 (1980) (the ultimate test is “whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made”); see also People v. Mendoza 153 Ill.Dec. 308 (1991); State v. Nation, 54 Ore.App. 929, 934, rev. denied 292 Or. 568 (1982). Afewstates have adopted a per se rule of inadmissibility for statements obtained in excess of a statutory period for arraignment. See 28 A.L.R.4th 1121 §3 (2004). How *60 ever, some states have adopted a qualified view that delay does not render a confession inadmissible unless the defendant was prejudiced or denied constitutional rights. See 28 A.L.R.4th §4; Ryan v. State, 303 Ark. 595 (1990); People v. Robinson, 192 Colo. 48 (1976). Still others have taken the approach that unnecessary or illegal delay in the arraignment of a defendant does not render inadmissible the confession given during the period of delay unless the delay induced or caused, or was used to extract, the confession. See 28 A.L.R.4th §5; State v. Hunter, 305 N.C. 106 (1982); Ex Parte Stansbery, 702 S.W.2d 643 (Tex.Crim.App. 1986).
ORDER
In the exercise of my discretion, I have determined that a question of law has arisen which is both important and doubtful and not likely to be addressed without this report, and thus should be reported to the Appeals Court. In accordance with Mass.R.Crim.P. 34,1 report the following question of law to the Appeals Court:
Whether the “safe harbor” rule established in Commonwealth v. Rosario, 422 Mass. 48, 56 (1996), should be modified or abandoned to allow the admission of otherwise voluntary statements obtained after a valid waiver of Miranda rights, in circumstances in which the defendant requests to speak with the interviewing police detective and makes an otherwise voluntary and admissible statement within the six-hour period but is interviewed again outside the six-hour period without a formal waiver of the safe harbor rule, where there is no evidence that police purposely delayed arraignment and no evidence that the police used physical or psychological coercion to obtain the statement.

The Court acknowledges the bright-line nature of the six-hour rale established in Commonwealth v. Rosario, 422 Mass. 48 (1996), but believes that in light of developments in other jurisdictions as discussed in the text infra and based on the circumstances involved in this case, the Appeals Court or the Supreme Judicial Court may recognize an exception to the rale or decide to reconsider the rale. In a separate ruling contained in the Appendix to this Report, the Court ruled that the stop of defendant Bilodeau’s vehicle, the stop and frisk of defendant Peguero, and the initial waiver of Miranda rights by defendant Bilodeau were valid. Thus, a determination of the admissibility of Bilodeau’s statements made beyond the six-hour “safe harbor” period is the remaining legal issue in connection with the defendant’s pretrial motion to suppress.

A more detailed statement of the facts is set forth in the Court’s separate Memorandum of Decision contained in the Appendix to this Report. [Editor’s Note: The Memorandum of Decision is reproduced immediately following this opinion as a separately reported decision rather than as an appendix to this opinion. See Commonwealth v. Trembley, 18 Mass. L. Rptr 60.]

The rale allows tolling of the six-hour period when interrogation is not possible for reasons not attributable to police, such as natural disaster or emergency. Rosario, 422 Mass, at 57. This case does not involve either situation.

 18 U.S.C. 3501(c) was passed in 1968 in response to the McNabb-Mallory rule, which excluded confessions when a person was not taken before a magistrate due to “unnecessary delay.” McNabb v. U.S., 318 U.S. 332 (1943); Mallory v. U.S., 354 U.S. 449 (1957). However, the majority of federal courts have followed the Ninth Circuit’s interpretation of 3501(c), that the statute was intended “to remove delay alone as a cause for rejecting admission into evidence of a confession and to make the voluntary character of the confession the real test of its admissibility.” People v. Cipriano, 431 Mich. 315, 322 (1980), quoting U.S. v. Halbert, 436 F.2d 1226, 1231 (9th Cir. 1970).

With facts very similar to the present case, in Hughes, the Pennsylvania Supreme Court declined to suppress a written statement recorded after the six-hour period, where the writing was a mere recitation of the defendant’s oral statement given within the six-hour period. Commonwealth v. Hughes, 555 A.2d 1264, 1278 (Pa. 1989).

Since the six-hour rale was to be applied prospectively, in Rosario the Court considered the admissibility of the confession under traditional principles and ruled that the police conduct was not so egregious or flagrant to justify suppression of the defendant’s statement. Id. at 58, citing Commonwealth v. Fryar, 414 Mass. 732, 743 (1993).