## COMMONWEALTH *vs.* DAVID ALICEA.

Essex. November 3, 1998. - January 21, 1999.

Present: WILKINS, C.J., LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Arrest. Practice, Criminal,* Motion to suppress. *Telephone. Statute,* Construction.

Where a defendant charged with murder in the first degree testified at trial that police had given him the opportunity to make a telephone call prior to his making incriminating statements, there was no basis for a claim on appeal after conviction that the judge erred in denying his pretrial motion to suppress those statements based on an assertion that police officers denied him the right to use the telephone in violation of G. L. c. 276, § 33A. [714-716]

INDICTMENT found and returned in the Superior Court Department on February 7, 1996.

A motion to suppress evidence was heard by *Richard E. Welch III,* J., and the case was tried before him.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Catherine L. Semel,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant appeals from his conviction of murder in the first degree. He argues that his statutory right to use a telephone, G. L. c. 276, § 33A, was violated, and, consequently, his motion to suppress two statements he made to the police should have been allowed by the judge. Specifically, he claims that the judge's ruling that he was not in custody, and therefore not entitled to § 33A rights, when he provided the first statement was erroneous. The defendant also requests that we exercise our power under G. L. c. 278, § 33E, to reduce the verdict to murder in the second degree. We rule that exclusion of the statements would not be appropriate because at trial the defendant himself testified that he was given the opportunity to make a telephone call prior to providing either of the chal-

lenged statements. It would be contrary to the interests of justice, and the deterrence of improper police conduct, to order the suppression of evidence for an alleged deprivation of a right that the defendant admitted never occurred. Because we conclude that the defendant's § 33A rights were honored, we need not address whether the judge's ruling on the custody issue was erroneous or not. We affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E.

1. *Background.* On December 8, 1995, the Lawrence police department was informed by Gloria Pena that her two children, Akeem Nathaniel Cintron, two and one-half years old, and Manuel Alicea, eleven months old, were buried in the Bellevue Cemetery in Lawrence. Captain Mulchan of the Lawrence police department then contacted Sergeant John Garvin of the Massachusetts State police. Garvin, Mulchan, and Detective Kirkham of the Lawrence police department traveled to the cemetery. The three officers searched for the bodies, but were unable to locate them. They then traveled a short distance to the apartment in Lawrence where Pena resided with her boy friend, the defendant, David Alicea. On arrival, at approximately 3:15 P.M., the officers informed the defendant that they were investigating the disappearance of the children. The defendant responded that he had sent the children to Puerto Rico because there was no heat in the apartment. At this juncture Kirkham read the defendant his Miranda rights for the first time. When told that the police had received information that the children were buried in the cemetery, the defendant asked that Pena be brought to the apartment. At approximately 3:30 to 3:40 P.M. Pena was brought to the apartment accompanied by Detective Mary Bartlett. After sitting together in silence for some time, Pena informed the defendant that she had told the police where the children were. The defendant did not respond, and Pena left with Bartlett after making this statement. Shortly thereafter the defendant indicated that the children were in the cemetery. The defendant agreed to travel with the police to the cemetery. The four then traveled to the cemetery, Garvin alone in his car and the defendant and Kirkham in the rear of Mulchan's car. At the cemetery the defendant did not get out of the car at first. He directed Garvin and Mulchan to a point in the woods, while Kirkham stayed with the defendant at the car. Garvin and Mulchan were unable to locate the bodies, so they asked for the defendant to "come up." The defendant then walked with

Kirkham to the search area and indicated where he had buried the two children. At Garvin's request, the defendant then traveled to the Lawrence police station with the officers.

On arrival at the station the three ate a meal they had picked up on the way back from the cemetery. After eating the meal, the defendant was taken into an interview room by Garvin and Kirkham. He was read his Miranda rights for the second time, and signed a Miranda waiver card. Garvin and Kirkham then questioned the defendant with Garvin writing out the defendant's answers.[1] The interrogation lasted until approximately 6:15 P.M. In the statement the defendant described finding Manuel dead on his bed one morning, face down on a pillow with a blanket over his head. He stated that he had picked Manuel up and that he felt cold. He attempted to revive him to no avail, yet did not call an ambulance because he feared that it would lead the Department of Social Services to take Akeem Nathaniel from them. He stated that he and Pena then buried the child. One night "[a] couple of weeks or a month later" the defendant put a container of rat poison on the floor next to Akeem Nathaniel's bed. The statement quotes the defendant as saying, "If he ate it, he ate it. If he didn't he didn't." The defendant said that he felt the child would be better off dead because of their poor living conditions and because Pena was abusive to him. The statement then recounts how the defendant subsequently found the child. "I found Nathan in the bed in the morning. It was light out. He had clear stuff coming out of his nose. [His] skin was pale, eyes were closed. He was cold. A lot of the mouse food was gone I had opened it for him." Later in the statement the defendant recounts finding the child eating the poison and taking it away from him and then smothering him with a blanket.[2] The defendant refused to sign this statement. At the conclusion of this interview, Garvin placed the defendant under arrest for the murder of Akeem Nathaniel. According to the officers' recollections, the defendant was then informed for the first time that he had the right to make a telephone call.

That evening the bodies of the two children were recovered from the cemetery. An autopsy performed the following morning determined that Akeem Nathaniel had died of asphyxiation

---

[1]The defendant testified at trial that Garvin did not write out "everything I was saying."

[2]The statement does not read in precise chronological order but, rather, it was written out as the defendant related the story to the officers.

with a secondary cause of rodenticide poisoning. The cause of death of Manuel was not determined.

On December 9, 1995, the defendant was read his Miranda rights for the third time and questioned. At this time the defendant gave a statement in which he denied any involvement in the children's deaths. The defendant stated that Pena told him that she killed Akeem Nathaniel by covering his mouth to stop him from crying. The defendant signed this second statement. He indicated that he had not signed the first statement because it was not all true.

The defendant moved to suppress his statements, alleging that he was deprived of various constitutional and statutory rights, including his right to make a telephone call.[3] The judge denied the motion after receiving evidence, including the testimony of Garvin and Kirkham. Garvin and Kirkham both testified that they did not advise the defendant of his right to make a call until after he provided the first statement. They further testified that the defendant was not in custody, and they were not required to advise him of his right to make a telephone call before the interrogation was complete. The judge concluded that it was only after the police obtained the first statement that probable cause to arrest the defendant existed, and, therefore, he was free to leave and was not in custody when he provided that statement. The judge ruled that the police did not have a duty to inform the defendant of his right to make a telephone call prior to completion of the first interview because he was not in custody until that time.

At trial, Garvin read the two statements in evidence. The defendant testified that his first statement, in which he incriminated himself, was false and was made in order to protect Pena. On February 28, 1997, the jury convicted the defendant of murder in the first degree.

2. *The right to use a telephone under G. L. c. 276, § 33A.* The only ground raised on appeal is that the police violated the

---

[3]In addition to the alleged deprivation of his statutory right to use a telephone, the defendant alleged that the statements were taken in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and his rights under arts. 12 and 14 of the Massachusetts Declaration of Rights; he did not knowingly, intelligently, and voluntarily waive his right to remain silent; and the police intentionally failed to arraign him promptly, depriving him of his rights under the Fifth, Sixth, and Fourteenth Amendments and art. 12. The alleged violation of the statutory right to use a telephone is the only one of these grounds argued on appeal.

defendant's statutory right to make a telephone call. See G. L. c. 276, § 33A.[4] The defendant argues that he was in custody when he made the December 8 statement to the police, and that he was not afforded the opportunity to make a telephone call within the prescribed statutory period, and, therefore, the statement should be suppressed. The defendant further argues that the statement he provided on December 9, 1995, should also be suppressed because it flowed directly from the statement of December 8.

We conclude that in the circumstances of this case, the statements should not be suppressed. The defendant took the stand at trial and testified, in effect, that his rights under G. L. c. 276, § 33A, were honored.[5] The defendant now asks this court to

---

[4]General Laws c. 276, § 33A, provides that: "The police official in charge of the station or other place of detention having a telephone wherein a person is held in custody, shall permit the use of the telephone, at the expense of the arrested person, for the purpose of allowing the arrested person to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney. Any such person shall be informed forthwith upon his arrival at such station or place of detention, of his right to so use the telephone, and such use shall be permitted within one hour thereafter."

[5]The defendant testified on cross-examination that he was offered the chance to make a telephone call before providing the first statement.

> THE PROSECUTOR: "Okay. And, at that point, Sergeant Garvin said . . . I'm going to write down everything you say?"
>
> THE DEFENDANT: "That's what he said."
>
> THE PROSECUTOR: "And he started with some general information about who you were, your date of birth, where you lived?"
>
> THE DEFENDANT: "Before that, he asked me if I wanted to make a phone call."
>
> THE PROSECUTOR: "Okay. And did you make a phone call after he gave you that opportunity?"
>
> THE DEFENDANT: "No. I didn't have my sister's numbers."

Later in his testimony, the defendant repeated that he was offered the chance to make a telephone call prior to the questioning:

> THE PROSECUTOR: "You never told them, hey, I want to call up an attorney, I want to call up my mother, I want to think about this?"
>
> THE DEFENDANT: "I didn't have my family's phone number."
>
> THE PROSECUTOR: "Did you ever ask them or tell them that you wanted

order the suppression of crucial evidence based on an alleged violation of those same rights. The legislative purpose of G. L. c. 276, § 33A, is stated plainly in its text: to allow a person in custody the ability "to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney." The statute itself does not prescribe any penalty for a violation of its mandate. To make the statute "an effective piece of legislation" in the absence of such a provision, we have grafted an exclusionary rule to it. *Commonwealth* v. *Jones,* 362 Mass. 497, 502 (1972). See *Commonwealth* v. *Bouchard,* 347 Mass. 418, 420-421 (1964). If intentional police misconduct deprives a defendant of the statutory right, suppression is required. See *Commonwealth* v. *Johnson,* 422 Mass. 420, 429 (1996); *Jones, supra* at 502-503. Here, however, because the defendant testified that the police complied with the requirements of § 33A, there is no reason to suppress his statements.

3. *General Laws c. 278, § 33E.* We have reviewed the record and find no reason to exercise our power under G. L. c. 278, § 33E.

*Judgment affirmed.*

---

to call your sister because you have their phone number?"

THE DEFENDANT: "No, because they just asked me if I wanted to use the phone before the questioning even began."